**WO**                                                                                                    JDN

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph A. Trenton, | No. CV 04-2548-PHX-MHM (DKD) |
| Plaintiff, | **ORDER** |
| vs. | |
| Arizona Department of Corrections, et al., | |
| Defendants. | |

Plaintiff Joseph A. Trenton brought this civil rights actions under 42 U.S.C. § 1983 against the following Defendants: (1) Dora Schriro, Director of the Arizona Department of Corrections (ADC); (2) Deputy Warden Klein; (3) Captain Carroll; and (4) Sergeant Carlin (Doc. #9).[1] Before the Court is a Motion to Dismiss filed by Schriro, Carlin, and Klein (hereinafter "Defendants") (Doc. #124),[2] which was fully briefed by the parties (Doc. ##129, 131). Plaintiff then filed a Motion for Leave to File a Sur-Reply, to which he attached his sur-reply (Doc. #135). The parties briefed the sur-reply (Doc. ##137-138). The Court will grant Plaintiff's motion and consider the sur-reply, and it will deny Defendants' motion.

---

[1] The Court dismissed Deputy Warden Schweitzer as a Defendant (Doc. #126).

[2] Defendants simultaneously filed a Motion to Stay Discovery pending a ruling on the Motion to Dismiss (Doc. #124). The Court denied the motion for a stay as premature (Doc. #133).

## I. Background

Plaintiff's claims arose during his confinement in the Arizona State Prison (Doc. #9). In Count I of his First Amended Complaint, Plaintiff alleged that in July 2003, he was placed in CB6—a maximum security facility—for 5 weeks in retaliation for filing grievances (id. at 4). Plaintiff stated in Count III that Schriro, Klein, and Carlin threatened his safety in May 2004, when they placed him in a small shower cell without bedding or a toilet for 3 days (id. at 6-6B). And in Count VI, Plaintiff claimed that Schriro, Carroll, and Carlin violated his due process rights during disciplinary proceedings stemming in part from the incident described in Count III (id. at 9-9A).[3]

Defendants move to dismiss Count I for failure to exhaust administrative remedies or, in the alternative, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) (Doc. #124 at 9).[4] Defendants further argue that Plaintiff's claims in Count III (in part), and Count VI fail to state a claim (id. at 10).[5] Plaintiff responded, and Defendants replied (Doc. ##129, 131).

The Court then issued the notice required under Wyatt v. Terhune, 315 F.3d 1108, 1120 n. 14 (9th Cir. 2003), which informed Plaintiff of his obligation to respond and the evidence necessary to successfully rebut Defendants' contentions (Doc. #133). Plaintiff filed a motion requesting leave to file a sur-reply, to which he attached his sur-reply (Doc. #135). Defendants responded, and Plaintiff replied (Doc. ##137, 138).

## II. Motion for Leave to File Sur-Reply

---

[3] Plaintiff moved to dismiss Counts II, V, and VII (Doc. #104); the Court granted Plaintiff's request (Doc. #110). The Court subsequently dismissed Count IV for failure to exhaust administrative remedies (Doc. #126).

[4] Defendants' motion also seeks to dismiss Counts II, IV, V and VII for lack of exhaustion; however, these counts were all previously dismissed. See n. 3.

[5] Defendants also argue that Counts II, IV, and VII fail to state a claim (Doc. #124). See n. 3.

- 2 -

Plaintiff was not given the requisite notice warning him of the evidence required to defeat a motion to dismiss for exhaustion until after he filed his response memorandum (see Doc. ##129, 133).  The Court will therefore grant the motion for a sur-reply and consider the parties' supplemental briefing.

## III.   Legal Standard

### A.   Exhaustion

Plaintiff must first exhaust "available" administrative remedies before bringing this action.  See 42 U.S.C. § 1997e(a); Vaden v. Summerhill, 449 F.3d 1047, 1050 (9th Cir. 2006); Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005).  He must complete the administrative review process in accordance with the applicable rules.  See Woodford v. Ngo, 126 S. Ct. 2378, 2384 (2006).  Exhaustion is required for all suits about prison life, Porter v. Nussle, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, Booth v. Churner, 532 U.S. 731, 741 (2001).

Exhaustion is an affirmative defense.  Jones v. Bock, 127 S. Ct. 910, 919-21 (2007).  Defendants bear the burden of raising and proving the absence of exhaustion.  Wyatt, 315 F.3d at 1119.  Because exhaustion is a matter of abatement in an unenumerated Rule 12(b) motion, a court may look beyond the pleadings to decide disputed issues of fact.  Id. at 1119-20.  Further, a court has broad discretion as to the method to be used in resolving the factual dispute.  Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988) (quotation omitted).

### B.   Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint.  North Star Int'l v. Arizona Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983).  Dismissal of the complaint, or any claim within it, "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); see also Robertson v. Dean Witter

Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).

In determining whether the allegations of a complaint state a claim upon which relief may be granted, the Court must take the allegations of material fact as true and construe them in the light most favorable to the plaintiff. Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (*per curiam*). Pro se pleadings must be held to a less stringent standard than formal pleadings drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Ortez v. Washington County, 88 F.3d 804, 807 (9th Cir. 1996). The rule of liberal construction of pleadings is "particularly important in civil rights cases." Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

**IV.     Count I**

    **A.     Exhaustion**

According to Department Order (DO) 802, which outlines the ADC grievance process, there are four steps to the grievance policy (Doc. #124, Ex. C). The first step of the process requires an inmate to attempt informal resolution by submitting an inmate letter to his assigned Correctional Officer (CO) III (id. at 5). If the inmate is not satisfied with the CO III's response to his inmate letter, he may file a formal grievance to the Grievance Coordinator within 10 days of receiving that response (id. at 6). If the inmate fails to explain his attempts at informal resolution in the formal grievance, the formal grievance is returned "unprocessed" to the inmate (id.). The inmate can correct the problem and resubmit the formal grievance within the original 10-day time frame (id.). The response to the formal grievance may be appealed within 10 days to the Deputy Warden, whose response may be appealed to the Director (id. at 7). The Director's response is final and exhausts the

administrative remedies (id.).

### *1. Parties' Contentions*

Defendants argue that Plaintiff failed to properly exhaust his claim against Schriro in Count I because (1) he did not attach a copy of the inmate letter to his formal grievance as required, (2) Plaintiff resubmitted his formal grievance well beyond the time frame within which to reinstate a formal grievance, and (3) the grievance appeal makes no reference to the Director's allegedly retaliatory motives (Doc. #131 at 2-4). In support, Defendants submit the affidavit of Aurora Aguilar, a Hearing Officer assigned to the ADC Central Office (Doc. #124, Ex. B, Aguilar Aff. ¶ 1). Aguilar attests that upon her review of the Grievance Appeal Log and Grievance Appeal files in the ADC Central Office, she found only one 2004 grievance appeal to the Director concerning placement in the shower cell in May 2004 (id. ¶ 6, Attach., Grievance No. A03-048-004). Defendants contend there are no grievance appeals regarding retaliation (Doc. #124 at 4).

Plaintiff asserts that he grieved his claim concerning placement in CB6 through to the Director; however, there was no response to the Director's appeal (Doc. #129 at 4-5). He proffers copies of his grievances and grievance appeals (id., Ex. 2). Plaintiff's evidence includes a copy of a formal grievance dated July 10, 2003, in which he wrote that he was not satisfied with the response to his inmate letter, which told him that movement is not grievable. The formal grievance also stated that his placement in segregation was unconstitutional, that he had been given no official reason for his placement, and that he could only deduce that his placement was retaliation for his ongoing litigation against ADC and its officials. He also noted in the grievance that he received no notice and no hearing (id.). The response to this formal grievance, dated July 17, 2003, stated that the grievance is unprocessed because there is no attached inmate letter and CO III response (id.).

Plaintiff proffered a copy of another formal grievance, entitled "Second Attempt (with original copy of i/m [inmate] letter response)," dated July 17, 2003—the same day he

- 5 -

received the response to his first formal grievance (id.). On this second form, he repeated the same description of his grievance as he set forth in his first attempt. This resubmitted formal grievance form reflects that a staff member signed and dated the form on July 18, 2003; however, the space to document the "action taken" by staff is left blank (id.).

The next form Plaintiff submits is a copy of his Inmate Grievance Appeal, dated August 20, 2003, and addressed to the warden (id.). The grievance appeal stated that Plaintiff is appealing the decision of the Grievance Coordinator because he submitted a formal grievance on July 17 about his placement in CB6 but received no response to that grievance (id.). The response to this grievance appeal from the Assistant Deputy Warden, dated August 24, 2003 and September 26, 2003, stated, "[y]our institutional placement and classification is not a grievable issue. Housing and placement is at the sole discretion of the Department. Your grievance is denied."

The last form Plaintiff submits is a copy of the Grievance Appeal to the Director, dated September 13, 2003 (id.). The top right corner of the form reflects the name, title, and badge number of the receiving officer and the date received; however, all the notations are illegible (id.). There was no response to this appeal.

*2.     Analysis*

The Court finds that the evidence sufficiently refutes Defendants' claims that Plaintiff failed to properly exhaust. Defendants' first two arguments—that Plaintiff did not properly exhaust because he failed to attach a copy of his inmate letter to the formal grievance and that he resubmitted his formal grievance outside of the applicable time frames—were waived when the Assistant Deputy Warden responded to the grievance appeal. Had the formal grievance been missing pertinent information or had it been outside of the time frames, the Assistant Deputy Warden would have been entitled to reject the grievance appeal for those reasons. Instead, he chose to address Plaintiff's complaint on its merits, thereby waiving any procedural deficiencies. Defendants cannot now claim that Plaintiff did not properly exhaust

- 6 -

when the Assistant Deputy Warden, who is responsible for responding to grievance appeals, did not rely on any procedural deficiency as grounds for denial. Thus, the Court rejects Defendants' contention that although the deputy warden responded to it, it was not a valid appeal because the grievance appeal was not processed or given a case number (id. at 3).

Defendants' claim that the grievance appeal makes no reference to retaliation and is therefore invalid, is also untenable. Plaintiff's formal grievance clearly alleged that his placement in CB6 was retaliation for previous legal action against ADC and its officials. As noted by Plaintiff, this was sufficient to put the prison on notice of Plaintiff's potential claims. The Ninth Circuit has explained that when an inmate has followed the instructions on the grievance form to "describe the problem," he has "availed himself of the administrative process the state gave him." Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005). Although Plaintiff did not include the exact same description of his complaint (*i.e.*, the word "retaliation") on his grievance appeal form, that does not defeat his claim because he could only appeal the same issue that was described in his formal grievance.

Finally, the Assistant Deputy Warden clearly and explicitly informed Plaintiff that his placement in CB6 was not grievable. Upon receipt of this response, Plaintiff was reliably informed that no further remedies were available. Brown, 422 F.3d at 935. "[A] prisoner need not press on to exhaust further levels of review once he has either received all 'available' remedies at an intermediate level of review or been reliably informed by an administrator that no remedies are available." Id. Thus, once he received the Assistant Deputy Warden's response, Plaintiff exhausted the available remedies; he was not required to file an appeal to the Director. As such, Defendants' argument that there is no evidence that Plaintiff's appeal to the Director was in fact submitted to an ADC official for processing is moot (see Doc. #131 at 4).

In sum, Defendants have failed to meet their burden to show lack of exhaustion. Their request for dismissal of Count I for nonexhaustion will be denied.

- 7 -

### B. Failure to State a Claim

Defendants argue that Count I, which alleged retaliation in July 2003, is barred by the 2-year statute of limitations (Doc. #124 at 10). They further argue that the allegations in Count I do not establish personal participation by Schriro, nor do they identify any unconstitutional policy enforced by Schriro; thus, they maintain she cannot be liable under § 1983 (id. at 10-11). Finally, Defendants argue that because Plaintiff has no liberty interest in a particular prison assignment and because he did not allege any physical injury as a result of placement in CB6, there is no viable constitutional claim (id. at 11).

In response, Plaintiff points out that he filed his Complaint on November 12, 2004, well within the 2-year statute of limitation for his July 2003 claim (Doc. #129 at 7). Plaintiff argues that he is not seeking *respondeat superior* liability against Schriro; rather, he alleges that she approved a retaliatory transfer and consequently, directly participated in the violation of his constitutional rights (id. at 9). Plaintiff maintains that he has a liberty interest against supermax-facility conditions but that he was not given any of the due process protections and that Schriro failed to correct his unconstitutional placement in CB6 after she learned of the transfer (id. at 9-10). Finally, as to the lack of injury argument, Plaintiff counters that 28 U.S.C. § 1997e(e) does not apply to constitutional claims, regardless of whether there is physical injury (id. at 13).

### *1. Statute of Limitations*

The claim in Count I arose in July 2003 (Doc. #9 at 4). Schriro was served in this action in October 2005 (Doc. #15). Defendants contend that because Schriro was not served within two years from the date the claim arose, it is time-barred and must be dismissed (Doc. #124 at 10). But it is the date of *filing*, not the date of service of process, that governs whether a claim is time-barred. Ariz. Rev. Stat. § 12-542 (personal injury claims "shall be *commenced* and prosecuted within two years after the cause of action accrues") (emphasis added). Plaintiff's original Complaint was filed in November 2004, well within the

- 8 -

1 applicable 2-year limitations period (Doc. #1). Defendants submit no legal argument to
2 support their contention that the date of service should govern the statute of limitations
3 determination in a § 1983 action. See Fed. R. Civ. P. 11(b)(2). Dismissal on this ground will
4 be denied.

### *2. Respondeat Superior*

Defendants' argument that Count I fails because there is no *respondeat superior* liability is based, in part, on their contention that "since Trenton never even initiated a grievance complaining that his placement at CB6 was retaliatory, [Schriro] would have no reason to know about it at all" (Doc. #124 at 11). As discussed above, Plaintiff submitted a formal grievance that clearly stated he believed the move to CB6 was retaliation for his legal action against ADC and its officials (Doc. #129, Ex. 2). More importantly, Plaintiff specifically alleged in Count I that his claim involved retaliation, that Schriro allowed his transfer to CB6, and that "it was obvious I was being punished for excersising [sic] my right to grieve and seek court assistance" (Doc. #9 at 4, ¶¶ 2-3). Under the parameters of Rule 12(b)(6), these allegations adequately state a claim under § 1983. Dismissal on this basis is not warranted.

### *3. Physical Injury*

Finally, the Court rejects Defendants' contention that "physical injury," as that term is defined in jurisprudence interpreting § 1997e(e), is an element of Plaintiff's civil rights claim. A procedural due process claim requires a showing of either an "atypical and significant hardship" on the inmate compared to normal prison life, or sanctions that exceed the inmate's sentence to such an extent that the Due Process Clause is directly implicated. Sandin v. Conner, 515 U.S. 472, 484 (1995), citing Washington v. Harper, 494 U.S. 210, 221-22 (1990) (liberty interest in avoiding involuntary administration of psychotropic drugs). Actual physical injury is not required. And the injury asserted in retaliation cases is the effect of the retaliatory conduct on the plaintiff's constitutionally protected rights. See

Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004); Rizzo v. Dawson, 778 F.2d 527, 531-32 (9th Cir. 1985) (retaliation for the exercise of a constitutionally protected right is, in itself, a violation of constitutional rights).

In contrast, "physical injury" is a term of art particular to 42 U.S.C. § 1997e(e), which provides that a prisoner may not bring a civil action for mental or emotional injury without a prior showing of "physical injury" that is more than *de minimus.* In Oliver v. Keller, the Ninth Circuit determined that even absent physical injury, the prisoner was entitled to seek compensatory, nominal, and punitive damages premised on violations of his Fourteenth Amendment rights. 289 F.3d 263, 629-30 (9th Cir. 2002). In Count I, Plaintiff alleged violations of his First, Eighth, and Fourteenth Amendment rights and specifically sought compensatory and punitive damages (Doc. #9 at 4, 11B). To the extent that Plaintiff has actionable claims for compensatory and punitive damages based on violations of his constitutional rights, his claim is not barred by § 1997e(e). As such, Plaintiff's failure to demonstrate a physical injury does not nullify his § 1983 claims. Defendants' request for dismissal on this basis will be denied.

## V.     Count III

In support of their Rule 12(b)(6) motion, Defendants argue that Plaintiff's failure to point to a relevant and constitutionally infirm provision of the policy that Schriro implemented and his failure to allege any personal participation, renders his claim against her in Count III invalid (Doc. #124 at 5). Defendants further argue that state law provides that any causes of action that arise out of a tort caused by the director or a prison employee shall run only against the state; thus, the state-law shower claim set forth in Count III must be dismissed (id. at 14). They also contend that the allegations in Count III do not give rise to an Eighth Amendment claim because there can be no *respondeat superior* liability under § 1983 (id.).

Plaintiff counters that Klein and Carlin were directly involved in placing Plaintiff in

- 10 -

the shower and Schriro approved his placement, so they are all liable (Doc. #129 at 14-15).

The allegations in the First Amended Complaint, standing alone, sufficiently allege liability on the part of Klein, Carlin, and Schriro. In Count III—which alleges a claim under the Eighth Amendment, not under state law—Plaintiff alleged that Klein forced him into the shower cell; that despite recommendations from medical personnel to remove Plaintiff, he was kept there under the direction of Klein and Carlin; that Klein and Carlin were following the course of treatment approved by Schriro; and that all three Defendants "knew of and disregarded an excessive risk" and "fail[ed] to intervene to prevent" that risk to Plaintiff's "health and safety" (Doc. #9 at 6-6A). These allegations state a constitutional claim against the three Defendants. Contrary to Defendants' assertion, Plaintiff is *not* required to proffer evidence to support his allegations in order to survive a Rule 12(b)(6) motion to dismiss (see Doc. #137 at 3). Fed. R. Civ. P. 12(b)(6); see Lee v. City of Los Angeles, 250 F.3d 668, 679 (9th Cir. 2001). The request to dismiss Count III will be denied.

## VI.   Count VI

As to Count VI, which alleged lack of due process in disciplinary proceedings, Defendants contend that since Plaintiff alleged he was denied clemency as a result of the proceedings, his claim concerns continued incarceration and must therefore be addressed in a habeas action, not a § 1983 claim (Doc. #124 at 15).

Plaintiff disputes Defendants' contention that if Plaintiff prevails, the only relief would be his release from prison (Doc. #129 at 15-16). He argues that his allegations do not challenge the validity of his continued incarceration. Plaintiff insists that he alleged a violation of his due process rights; the denial of a clemency hearing was just one consequence of his allegedly unwarranted disciplinary ticket (id. 15-17).

In his First Amended Complaint, Plaintiff stated that his claim in Count VI involves "disciplinary proceedings" and that his *injury* resulting from the alleged violation was the "deprivation of due process and all rights provided by the 1st, 4th, 6th, 8th, and 14th

- 11 -

1 [A]mendments; and clemency" (Doc. #9 at 9-9A). But in his Request for Relief, Plaintiff sought only a declaratory judgment, an injunction for medical treatment, expungement of his disciplinary ticket, and monetary damages; he did *not* seek release or clemency (id. at 11-11B). Thus, it is clear that Plaintiff is not challenging the validity of his continued incarceration. The Court will deny the request to dismiss Count VI.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Plaintiff's Motion for Leave to File Sur-Reply (Doc. #135).

(2) Plaintiff's Motion for Leave to File Sur-Reply (Doc. #135) is **granted**.

(3) Defendants' Motion to Dismiss (Doc. #124) is **denied**.

(4) The remaining claims are Counts I, III, and VI against Defendants Schriro, Klein, Carlin, and Carroll.

DATED this 14th day of January, 2008.

_____
Mary H. Murgia
United States District Judge